IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRAY K. KAPIKO, | ) | CIVIL NO. 08-00511 SOM/LEK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| MICHAEL B. DONLEY, Secretary | ) | |
| of the Air Force, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        Bray K. Kapiko, a civilian electrician working at
Hickam Air Force Base, brings this action claiming that he was
retaliated against for filing charges with the Equal Employment
Opportunity Commission ("EEOC").  See Second Amended Complaint,
Count II (July 23, 2009).  Kapiko's Second Amended Complaint also
asserted race, color, and national origin discrimination.  See
Second Amended Complaint, Count I.  However, in his Opposition,
Kapiko indicated that he is dismissing Count I.  See Opposition
at 25 (Oct. 1, 2009) ("Plaintiff's race, national origin, and
color discrimination claims were dismissed via stipulation and
are thus moot.").  This court therefore dismisses Count I of the
Second Amended Complaint.

        The Air Force, Defendant in this case, has moved for
summary judgment on the remaining retaliation claim.  The court

grants that motion.  To the extent Kapiko asserts a retaliation claim based on his five-day suspension in 2004, summary judgment is granted to the Air Force because Kapiko fails to raise a genuine issue of fact as to whether the proffered reason for the suspension was pretextual.  To the extent Kapiko asserts a retaliation claim based on denial of a promotion in 2007, summary judgment is granted in favor of the Air Force because Kapiko fails to raise a genuine issue of fact as to whether his previous charge(s) of discrimination caused the denial.  Finally, to the extent Kapiko asserts a retaliation claim based on having to take two hours of annual leave to attend a party or having to remove an earring or refrain from wearing tank tops while at work, summary judgment is granted in favor of the Air Force because Kapiko fails to establish that these were adverse employment actions or to raise a genuine issue of fact as to whether the Air Force's legitimate nondiscriminatory reasons for these actions were pretextual.

II.      SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c) (effective Dec. 1, 2007).

One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment." Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006). Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See Celotex, 477 U.S. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987. "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything." In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan

3

Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Miller, 454 F.3d at 987.  This means that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).   "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

4

III.     <u>BACKGROUND FACTS.</u>

There is no dispute that, in 2003, Kapiko filed a charge of race discrimination against his employer, the Department of the Air Force, arising out of a one-day suspension. This suspension appears to have been proposed by Kapiko's supervisor, Frank Correa, after SMSgt Alvin Douglass had reported Kapiko for having taken a break at the wrong time.  <u>See</u> Ex. 1 to Plaintiff's Concise Statement (Oct. 1, 2009) (Notice of Proposed Suspension for One Day).  On or about January 29, 2004, the Air Force determined that the charge was untimely.  <u>See</u> Ex. 5 to Plaintiff's Concise Statement.  On or about March 1, 2004, Kapiko appealed this decision to the EEOC.  <u>See</u> Ex. 6 to Plaintiff's Concise Statement.  The record is unclear as to when the EEOC ruled on the appeal.

In 2006, Kapiko's supervisor, Frank Correa, said that he was unaware of the 2003 charge of discrimination.  <u>See</u> Ex. 1 to Defendant's Concise Statement (Aff. of Frank Correa ¶ 5 (Sept. 27, 2006)).  As part of the investigation of Kapiko's charge, however, Correa may have been interviewed and therefore may have had actual knowledge of the 2003 charge of discrimination.  <u>See</u> Ex. 2 to Plaintiff's Concise Statement (Oct. 1, 2009) (EEO Counselor's Report).

Kapiko says that, on or about February 3, 2004, Correa told him that he would not be allowed to go to physical therapy.

In a recently filed declaration, Kapiko claims that he told Correa, "What the fuck."  Kapiko says that, after that, Correa told him that he was being written up for swearing.  <u>See</u> Declaration of Bray K. Kapiko ¶ 20 (Sept. 30, 2009).  However, in an earlier affidavit, Kapiko admitted that it was "probably true" that he was shouting at Correa and that he was pointing his hand and fingers at him.  <u>See</u> Affidavit of Bray K. Kapiko ¶ 11 (Sept. 26, 2006).  Kapiko admitted that he may have said "this is fucking bull shit" and "fuck this shit."[1]  <u>Id.</u>

Correa characterizes Kapiko's conduct as "blowing up" and "attacking me."  Correa Aff. ¶ 10.  Correa says that Kapiko was swearing at him and disrespecting him.  <u>Id.</u> ¶ 11.  Correa says that he consulted with Cindy Miike of the personnel office and was told that, because Kapiko had received a one-day suspension in 2003, Correa could propose disciplinary action against Kapiko ranging from a two-day suspension to a thirty-day suspension.  <u>Id.</u> ¶ 12.  Correa says that he decided on a five-day suspension.  <u>Id.</u> ¶ 13.  Correa says that he talked with Douglass

---

[1]Kapiko's attorney has submitted a declaration that purports to state facts relevant to this motion.  Because Kapiko's attorney appears to lack personal knowledge of the underlying facts, the court disregards her declaration to the extent it purports to state the underlying facts, as Rule 56(e) of the Federal Rules of Civil Procedure requires affidavits to be made based only on personal knowledge.  The court notes, however, that the result of this motion would not change even if the court considered Kapiko's counsel's declaration.

about the five-day suspension only after he decided on the length of the suspension.  Id. ¶ 14.

Kapiko says that he was thereafter suspended for five days from March 22 to 26, 2004.  Id. ¶ 22.  Kapiko says that other individuals at his workplace swore but were not similarly suspended.  Kapiko Aff. ¶ 14.  For example, Kapiko says that another individual was only suspended for three days when he told other supervisors "fuck this, this is crazy."  Kapiko Decl. ¶ 24. However, Kapiko does not demonstrate that he has personal knowledge of what the other employee said.  See F. R. Civ. P. 56(e).  At best, Kapiko submits the testimony of Douglass, who says that daily conversation at the workplace included swearing, as in "did you see this fucking whatever."  See Hearing at 134 and 137 (Feb. 19, 2008).

Kapiko also points to testimony of Bien Covita, who said that, at a regular morning meeting with Correa, another employee, Stout, was angry that he had not received some material.  Covita testified that Stout said, "I don't give a fuck who you are.  I need to get my material."  See Testimony of Bien Covita at 242-45 (Feb. 19, 2008) (attached as Ex. 9 to Plaintiff's Concise Statement).  Covita testified that another employee, Yasuda, also put in his "two cents."  Covita testified that Stout's and Yasuda's comments were not made toward Correa

and that neither Stout nor Yasuda pointed fingers at Correa.  Id. at 250-51.

There is no dispute that Kapiko timely filed an administrative charge of retaliation discrimination based on the five-day suspension or that this action was timely filed after Kapiko received a notice of right to sue based on his five-day suspension following Kapiko's 2003 charge of race discrimination.

Kapiko asserts that, because he filed discrimination charges in 2003 and 2004, he was retaliated against in August 2007, when he was not selected for a promotion.  See Kapiko Decl. ¶ 26.  Kapiko apparently filed another charge of discrimination arising out of this nonpromotion.  See Ex. 11 to Plaintiff's Concise Statement.  The person who decided not to promote Kapiko was Creighton Lee, who became Kapiko's supervisor in October 2004.  Lee says that, of the five people he interviewed for the position, Kapiko scored the lowest.  See Declaration of Creighton Lee ¶¶ 3-4 (Sept. 10, 2009).  Lee says that, in making the decision to promote someone other than Kapiko, he considered past work leader experience, appraisals by past supervisors, and an interview of all candidates consisting of the same questions. Lee says that the person he chose had been "a temporary work leader multiple times" and that Kapiko had only served as a work leader for a short period of time.  Lee says that the person who was chosen for the position received higher ratings by his

8

supervisors than Kapiko had received.  Finally, Lee says that four of the six questions he asked during the interview pertained to electrical safety and Kapiko demonstrated the least knowledge about that subject of all of the candidates interviewed.  <u>Id.</u> ¶ 5.  Kapiko, on the other hand, claims that he should have been the person promoted because he was more qualified than the person who was hired for the position, having had more and better work experience.  <u>See</u> Kapiko Decl. ¶¶ 35-36.

There is no admissible evidence in the record indicating that, when Lee decided to promote someone other than Kapiko, Lee knew of any prior charge of discrimination made by Kapiko.  This court asked Kapiko in its usual prehearing inclination to come to the hearing prepared to point to any such evidence.  Kapiko did not do so.

As Lee appears to have been interviewed concerning the nonpromotion retaliation charges, he apparently knew that Kapiko had filed discrimination charges based on his nonpromotion in 2007.  <u>See</u> Ex. 11 to Plaintiff's Concise Statement.

Kapiko asserts that, in September 2008, Lee again retaliated against him out of anger that Kapiko had charged Lee with discrimination arising out of the nonpromotion in August 2007.  Kapiko says that, on September 13, 2008, he was forced to take two hours of annual leave to attend a retirement party, while other attendees were not required to take the same leave.

See Kapiko Decl. ¶¶ 27, 38.  Lee says that he ordered that all persons attending the off-base retirement party be charged annual leave if they stayed at the party beyond 2 p.m.  Lee says that, at the time he issued that directive, he did not know that Kapiko would be attending the retirement party.  See Lee Decl. ¶ 5. Kapiko presents no admissible evidence indicating that Lee knew that Kapiko would be charged annual leave for attending the party.  Lee's directive was apparently carried out by another of Kapiko's supervisors, Steven Cruse.  See Kapiko Decl. ¶ 38 ("Master Sergeant Steven Cruse informed me that by order of Element Chief Craighton [sic] Lee, if I planned to stay at the party until 4:00 p.m. I had to sign for 2 hours of annual leave.").  Kapiko apparently believes that he was the only civilian employee who attended the retirement party and was charged two hours of annual leave at the time.  See Ex. 12 to Plaintiff's Concise Statement (EEO Counselor's Report).

Kapiko further asserts that Lee retaliated against him by ordering Kapiko to refrain from wearing an earring and tank-tops to work.  See Kapiko Decl. ¶¶ 28-29.

IV.    ANALYSIS.

Count II of the Second Amended Complaint asserts that Kapiko was retaliated against in violation of Title VII, 42 U.S.C. § 2000-e-3(a), which prohibits employers from retaliating

10

against employees who have "opposed any practice made an unlawful employment practice" by Title VII.

The Ninth Circuit has ruled that the "elements of a prima facie retaliation claim are, (1) the employee engaged in a protected activity, (2) [he or] she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action." Davis v. Team Elec. Co., 520 F.3d 1080, 1093-94 (2008).

The Supreme Court has explained that, in the Title VII context, a "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." See Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  The Ninth Circuit has further explained that an "adverse employment action" in a Title VII retaliation case is any adverse treatment "reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000); accord Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) ("An adverse employment action is any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." (quotations and citation omitted)).

11

Kapiko may demonstrate retaliation in violation of
Title VII in two ways.  He may simply produce "direct or
circumstantial evidence demonstrating that a discriminatory
reason more likely than not motivated the employer."  Surrell v.
Cal. Water Serv. Co., 518 F.3d 1097, 1105 (9th Cir. 2008).
Alternatively, Kapiko's retaliation claim may be subject to the
well-known burden-shifting analysis set forth in McDonnell
Douglas Corp. v. Green, 411 U.S. 792.  See Davis, 520 F.3d at
1088-89; Surrell, 518 F.3d at 1106.  This means that, once Kapiko
demonstrates a prima facie case of retaliation, the burden shifts
to the Air Force to set forth a legitimate, nonretaliatory reason
for its actions.  When the Air Force articulates a legitimate,
nondiscriminatory reason for its action, the presumption of
discrimination "drops out of the picture," and Kapiko may defeat
summary judgment by satisfying the usual standard or proof
required under Rule 56(c) of the Federal Rules of Civil
Procedure.  See Surrell, 518 F.3d at 1106 (quotations and
citation omitted).  Kapiko may then offer evidence that "the
employer's proffered nondiscriminatory reason is merely a pretext
for discrimination."  See id.; accord Davis, 520 F.3d at 1088-89.
Kapiko "need produce very little evidence in order to overcome
[his] employer's motion for summary judgment" because the
ultimate question is one that can only be resolved through a

searching inquiry.  See Davis, 520 F.3d at 1089 (citations omitted).

The Air Force has moved for summary judgment on the five grounds of retaliation asserted in the Second Amended Complaint: 1) Correa's five-day suspension of Kapiko in 2004 allegedly because Kapiko had filed charges of race discrimination in 2003 and 2004; 2) Lee's failure to promote Kapiko in August 2007 because of Kapiko's discrimination charges in 2003 and 2004; 3) Lee and Cruse's requirement that Kapiko take two hours of annual leave in September 2008 to attend a retirement party because of Kapiko's charges in 2003, 2004, and 2007; 4) Lee's order that Kapiko remove his earring in September 2008 because of Kapiko's charges in 2003, 2004, and 2007; and 5) Lee's order that Kapiko not wear tank tops in September 2008 because of Kapiko's charges in 2003, 2004, and 2007.  The Air Force is granted summary judgment on each of these claims.

> A.   With Respect to Kapiko's Retaliation Claim Based on the Five-Day Suspension in 2004, Kapiko fails to Raise a Genuine Issue of Fact as to Pretext.

To the extent Kapiko asserts a retaliation claim based on Correa suspending him for five days in 2004, Kapiko relies on the McDonnell Douglas burden-shifting framework.  Summary judgment is granted in favor of the Air Force on that retaliation claim because Kapiko fails to raise a genuine issue of fact as to pretext.  Kapiko establishes a prima facie case of retaliation based on his 2004 suspension.  See Davis, 520 F.3d at 1093-94

13

(detailing elements of a prima facie case).   There is no dispute that Kapiko engaged in a protected activity when he filed a charge of discrimination in 2003.   There is also no dispute that Kapiko suffered an adverse employment action when he was suspended, as a suspension is adverse treatment that may be "reasonably likely to deter the charging party or others from engaging in protected activity." Ray, 217 F.3d at 1242-43. Finally, because the suspension occurred in March 2004 and arose out of conduct that occurred less than one week after it was determined that the 2003 charge of discrimination was untimely, a reasonable inference of causation between the protected activity and the adverse employment action could be drawn.

Because Kapiko has presented a prima facie case of retaliation based on the five-day suspension in 2004, the burden shifts to the Air Force to set forth a legitimate, nonretaliatory reason for its actions.  See Davis, 520 F.3d at 1088-89; Surrell, 518 F.3d 1105-06.  There is no dispute that Kapiko shouted and swore at Correa and pointed his hand and fingers at Correa. Correa characterized Kapiko's conduct as "blowing up" and "attacking him."  Such conduct went well beyond the swearing used in everyday conversation at the workplace.  Insubordinate, disrespectful, and abusive conduct could certainly be a legitimate, nondiscriminatory reason for Kapiko's suspension. Accordingly, on this motion for summary judgment, the burden

14

shifts back to Kapiko to demonstrate that the Air Force's explanation was a pretext for discrimination.  See Davis, 520 F.3d at 1088-89.; Surrell, 518 F.3d at 1106.

Kapiko fails to raise a genuine issue of fact as to pretext.  At best, Kapiko argues that another individual swore at a different supervisor and only received a three-day suspension. Even assuming that that occurred, Kapiko fails to raise a genuine issue of fact on this summary judgment motion, as Kapiko fails to provide any admissible detail about that event.  There is nothing in the record indicating that the other individual's words, tone, and body language were similar to Kapiko's such that an inference of discrimination could be drawn from the two-day difference in punishment.  Kapiko certainly could have conducted discovery and presented the court with such evidence.  Having failed to do so, Kapiko does not raise a genuine issue of fact as to pretext merely by claiming that another individual was not punished as severely when that individual allegedly swore at a different supervisor.

Nor does Kapiko raise a genuine issue of fact as to pretext based on Covita's testimony that, at a morning meeting with Correa, Stout and Yasuda used profanity.  Covita testified that Stout's and Yasuda's comments, though laced with profanity, were not directed at Correa, and that neither pointed fingers at Correa.  Accordingly, Kapiko fails to show that he was treated

15

differently from a similarly situated individual such that an inference of discrimination may be drawn.

Kapiko also fails to raise a genuine issue of fact as to pretext merely because people in his workplace swore in everyday conversation.  Such everyday conversation did not involve "blowing up" or "attacking" a supervisor.

Although Kapiko only needed to produce "very little evidence" of pretext to overcome the Air Force's motion, see Davis, 520 F.3d at 1089, he does not meet that low standard. Accordingly, summary judgment is granted on Kapiko's retaliation claim based on the five-day suspension in 2004.

> B.   With Respect to Kapiko's Retaliation Claim Based on Lee's Decision to Promote Someone Else in 2007, Kapiko fails To Present a Prima Facie Case Because He Fails to Establish Causation.

To the extent Kapiko asserts a retaliation claim based on Lee's decision not to promote him in 2007, Kapiko relies on the McDonnell Douglas burden-shifting framework.  Summary judgment is granted to the Air Force on that claim because Kapiko fails to establish the causal link between the decision not to promote him and any protected activity.  There is no evidence in the record indicating that Lee even knew of Kapiko's prior charges of discrimination when Lee made the decision to promote another individual.  Although Lee worked as one of Kapiko's supervisors while the charges of discrimination were being investigated, he was not Kapiko's supervisor when Kapiko filed

16

his charges of discrimination in 2003 and 2004.  There is simply
nothing in the record from which an inference could be drawn that
Lee failed to promote Kapiko because of Kapiko's earlier
protected activity.

Lee states that he promoted someone other than Kapiko
because that individual scored better on leadership experience,
supervisor evaluations, and the interview questions.  Even if the
court assumes that Kapiko has made out a prima facie case of
retaliation based on his nonpromotion, Lee provides a legitimate,
nondiscriminatory reason for having promoted someone else.  The
burden thus shifts to Kapiko to raise a genuine issue of fact as
to pretext, which Kapiko fails to do.  At best, Kapiko presents
his own belief that he should have been hired because Kapiko
views himself as having had more and better experience than the
person selected for promotion.  This belief is insufficient to
raise a genuine issue of fact as to whether Lee decided not to
promote Kapiko based on a discriminatory reason.  Kapiko does not
demonstrate that Lee relied on improper criteria in deciding whom
to promote, instead arguing that Lee should have relied solely on
past work experience.  Kapiko does not argue, for example, that
other similar promotions were based solely on work experience
such that an inference could be drawn that the criteria were
changed to exclude Kapiko.  No inference of discrimination can be
drawn under the circumstances.  Summary judgment is also granted

in favor of the Air Force because Kapiko fails to produce even the "very little evidence" of pretext necessary to overcome the Air Force's motion.  See Davis, 520 F.3d at 1089.

> C.   With Respect to Kapiko's Retaliation Claim Based on the Requirements that He Take Two Hours of Annual Leave, Remove His Earring, and Refrain from Wearing Tank Tops, Kapiko Fails to Make Out a Prima Facie Case Because He Fails to Establish Adverse Employment Actions.

Because the third, fourth, and fifth bases for the retaliation claim do not amount to adverse employment actions, Kapiko fails to alleged a prima facie case of retaliation based on those claims.  As a matter of law, no adverse employment action occurred when Kapiko was forced to take two hours of annual leave to attend a retirement party or was told to take off his earring and to refrain from wearing tank tops.  Those matters are not "reasonably likely to deter the charging party or others from engaging in protected activity."  Ray, 217 F.3d at 1242-43; accord Poland, 494 F.3d at 1180.  Summary judgment is therefore granted in favor of the Air Force on those claims.

Even if Kapiko could be said to make out a prima facie case of retaliation based on the two hours of annual leave, earring, and tank top incidents, the Air Force has provided legitimate, nondiscriminatory reasons for its actions, and Kapiko has not raised an issue of fact as to pretext.

With respect to the two hours of annual leave, Lee says that he issued a general directive that all employees under his

18

supervision who wanted to attend the party beyond 2 p.m. would have to take two hours of annual leave.  Lee says that, when he issued that general directive, he did not know that Kapiko was going to the party.  See Lee Decl. ¶ 5.  Kapiko argues that an inference of pretext may nevertheless be drawn because other civilian employees were not charged two hours of annual leave to attend the party until after Kapiko complained.  This court is not convinced that Kapiko raises a genuine issue of fact.  This court asked Kapiko in its usual prehearing inclination to come to the hearing prepared to demonstrate whether any of those individuals was supervised by Lee or by Cruse, the person who actually made Kapiko take the annual leave.  Exhibit 12 to Plaintiff's Concise Statement indicates that Kapiko was the only civilian from the electrical shop who attended the retirement party.  Kapiko did not provide the requested evidence and therefore fails to demonstrate that similarly situated individuals were treated differently by Lee or Cruse such that an inference of discrimination may be drawn.

With respect to the earring and tank top incidents, Lee testified that Kapiko was to refrain from wearing earrings because an electrical safety directive had previously been issued barring electricians from wearing earrings.  There is no dispute that Lee's justification for telling Kapiko to refrain from wearing tank tops was also based on safety.  See, e.g. Kapiko

19

Decl. ¶ 44.  Kapiko submits no admissible evidence indicating that other electricians were treated differently.  At best, Kapiko says that he had previously been allowed to wear tank tops, and that other employees were allowed to wear tank tops. In saying that he had previously been allowed to dress in a certain way, Kapiko does not say the previously permitted dress was appropriate.  And in pointing to other employees, Kapiko does not explain what those other employees did.  Without more information about the circumstances surrounding the other individuals, an inference of pretext cannot be drawn and Kapiko has not met his burden of raising a genuine issue as to pretext on this motion.

Summary judgment is therefore also granted in favor of the Air Force on the retaliation claims based on the requirements that Kapiko take two hours of leave and refrain from wearing earrings and tank tops because Kapiko fails to produce the "very little evidence" of pretext necessary to overcome the Air Force's motion.  <u>See</u> <u>Davis</u>, 520 F.3d at 1089.

V.       <u>CONCLUSION.</u>

For the reasons set forth above, the Air Force's motion for summary judgment is granted.  The Clerk of Court is directed to close this case.

20

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 22, 2009.



        /s/ Susan Oki Mollway
       Susan Oki Mollway
       Chief United States District Judge

Kapiko v. Donley, CIVIL NO. 08-00511 SOM/LEK; ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT